We'll move now to the next case on the calendar, EB Safe LLC v. Hurley. We have Mr. Steiner arguing for the appellant, reserving two minutes per rebuttal. Go ahead, Mr. Steiner. Judge Bianco? Yes. Judge Walker. Judge LaValle is going in and out when he speaks. Yes. You can't hear everything he's saying. Is there any way to improve that, do we know? Perhaps you can be closer to the microphone? Yes, Judge LaValle, sometimes you do go in and out as you're asking questions. All right, Mr. Steiner, go ahead. Thank you, Your Honor. Neil Steiner of Deckert for appellant, EB Safe. May it please the court. This appeal is from the confirmation in part of an arbitration award to the extent that the arbitration award confirmed a partial award of attorney's fees in favor of the respondent in the amount of $2.1 million. And there are two grounds. We recognize that arbitration awards aren't lightly set aside, but we think there are two independent grounds here that amply justify vacating the attorney's fee award. The first is manifest disregard of the law, and on that, while it's a high standard, we think the panels own determination here, their own words here show that they disregarded the law, which is to say there was a request for roughly $4.75 million in attorney's fees for an arbitration that was approximately five months start to finish, five days of hearing, no depositions. Included in that was about a half a million dollars of attorney's fees for a Texas divorce lawyer that the panel had. Aside from that, with respect to the challenge that we made to the reasonableness of the fee request, the panel said that it lacked sufficient information to impugn the overall amount claimed, and so it took that amount and then because of the partial success simply cut it in half. And we think that meets the standard of manifest disregard because the law on, it's Delaware law that applies to this dispute. Delaware law is clear that the party seeking fees has the burden to show not just entitlement, but also to show reasonableness. We presented in the briefing to the tribunal those two controlling Delaware cases that said that that was the requirement. There was no such showing, and in fact what the tribunal said is we don't have enough information, and we respectfully submit that saying you don't have enough information is ignoring the law that the burden in that regard is on the party seeking fees. One thing that struck me, Mr. Counselor, was that the fee that EB SAFE requested, and I'm sure you would agree that that would be a reasonable request, was about two million dollars, slightly under two million dollars, correct? Correct. And that was, those were the attorneys working on the other side of the case, from the case, from the side that got the award. And the judge effectively reduced the fee from the original 4.78 million request to 2,113, which was, you know, close to what you had requested. So that's right, Your Honor, but the difference, right, the request that was made by the respondent was the 4.75 reduced to 4.3 million dollars in fees. It was cut in half by the panel, not because the fees were so out of line with respect to our fees for the flip side of the same arbitration, but because the success, I think they said, was the respondent changed his position in a way to get closer and closer to what we were asking for on some of the points. And so while he prevailed on what was remaining, he'd given up substantial ground, and they find that in their, it's a detailed opinion, where they find that that's what happened. No, I understand that. I'm just looking at the side of it that says, you know, that tries to value how much the how much it cost in terms of actual numbers, in terms of hours spent, and so forth. So it doesn't seem to be out of line there. Now, you're making a different point. You're making a point that they shouldn't have been entitled to that amount because it wasn't a complete victory on everything. Well, it's slightly different, Your Honor, in that what the panel said was that the reason that it went from 4.3 million to 2.15 million and cut it in half was because of the partial success, right? So they said, we'll award them 50 percent of what's recoverable. What's recoverable in the abstract could only be what's reasonable. And so what they did is said, we don't have information to decide whether this is reasonable, so we'll accept it as reasonable or recoverable, but we'll cut it in half in view of the fact that it was only a partial win, including, for example, that we were entirely successful in defeating the amended counterclaim. How is this a manifest disregard of the law? That's the other question I have. Right. Wasn't enough said and enough pointed out to show that the district court didn't disregard the law? They didn't apply it perhaps the way you would have liked to have had it be applied or the way we would have applied it? Yeah, and they certainly didn't apply it the way we would like it to be applied, but that's not why we're here. What they did, right, is we briefed Delaware law that said it's the party seeking to recover fees that has the burden of demonstrating reasonableness. And there's a multifactor test laid out by the Delaware Supreme Court that that's the standard for evaluating reasonableness. And instead of applying that standard, and that was that was briefed to the tribunal in the post hearing, the post argument briefing to the tribunal. And instead of applying that standard, what they said was they lacked sufficient information. And so they did apply. I don't think you're arguing. They specifically said in paragraph 215, the tribunal concludes that it is reasonable and appropriate toward Mr. Hurley, you know, 50 percent. So they use the word reasonableness. They clearly understood that reasonableness was the standard, right? Isn't that a clear indication they applied a reasonableness standard? I think what you're suggesting is I think you're saying they like shifted the burden of who has to show reasonableness or reasonableness. Is that what you're saying? Well, that's in part right, your honor. But what they did, I mean, I think you left off what I think is a key word, which is they say it's appropriate in examining the overall circumstances, overall success. It's appropriate. Sorry, it's reasonable and appropriate to award Mr. Hurley 50 percent of his recoverable legal fees and costs and recoverable legal fees and costs can only be what they've determined were fees that were reasonably incurred. And so that's why the 50 percent clearly is with respect to adjustments for the moderate success and the recoverable refers to what was proven as reasonable fees, because an unreasonable fee request is not recoverable. And I think that that's black letter, both in Delaware and in New York, that an unreasonable request. You want us to conclude that they manifestly disregarded the law, even though they use the word reasonableness in their conclusion, right? That's what you're telling me. Even though they use the word reasonableness, they really don't understand what they were saying. Well, they weren't making it when they use the word reasonable there. I think it's clearly not in reference to a showing that the fees that were incurred were reasonable. I think it's clear that what they're doing, they're saying in view of the factors that are required to be considered in terms of the conduct of the hearing, in view of the relative success of the parties, giving him 50 percent of what's recoverable is appropriate. So you think the reasonableness only applied to the amount of success. It didn't apply to the fees themselves. That's what you're saying. Correct. Because when they say recoverable, that's making a determination that the entire $4.3 million award is recoverable. I'm not sure in arbitration that we should slicing the language in the way the standard is so high for us to conclude that this is a manifest disregard of the law, I think, is really parsing the words. Well, your honor, the reason I disagree is because of the sentence in paragraph 214 that says they lack sufficient information, because I think that's an acknowledgement of what the law requires, which is brief to them and express ruling. So it's not where they're silent and you look and search the record for, is there anything that could support it? They've made a statement and that statement is an erroneous statement of law that was briefed to them. Well, you can reconcile that. Judges all the time when they have fee requests may say, you haven't shown me how this is unreasonable. That doesn't necessarily mean they've shifted the burden. They're looking to the other side to try to explain why it's unreasonable. I'm not sure that means they're disregarding the law when they say you haven't that this is unreasonable. Judges say that all the time. Well, I think under Delaware law, which was clearly briefed, that burden is on the person seeking to be awarded fees and not on the person opposing fees. But I'll turn unless there are other questions on that. I'll turn briefly to the alternative. Very briefly, we lost your clock for some reason. I'm being told your time is up and you have two minutes rebuttal, but I'll give you like one more minute if you just want to. Sure. The other ground on perjury, I think, is very clear. There's testimony, right? The award here under the CPR rules, you have to consider the overall conduct of the parties. And so if there in fact is perjury, that would be material to the outcome of determining whether or not to award fees or the amount in the panel's discretion. And there was testimony concerning why Mr. Hurley, elicited by Mr. Weiner on direct, why Mr. Hurley went out and disclosed his arrest to some of the business partners, even though it hadn't been disclosed to the board of the fiduciary network. And he explained timing wise that it was after a call from my partner, Mr. Levander to Mr. Weiner. And he put in the question of why did you do that? It was because this call had been made that the claimants knew about his arrest for domestic violence. And he wanted to tell people that he had a relationship with before it otherwise came out. It then came out after the hearing and submissions that he made to the internal investigator, investigating, you know, that was doing the investigation on behalf of the board with respect to the impact of that arrest, that in fact, this conversation was before and not after the call that he referred to. And so his entire explanation as to it was done in response to this but this was brought out on direct testimony. It was clearly false. And given the standards for awarding fees and the considerations on the CPR rules, that perjury affects the determination of the fee award. Isn't a problem here because the statement was statements were, it may have been incorrect, but incorrect is not, doesn't equate to perjury. I mean, there, it has to be intended. And that's, that's the point where that's where I'm having problems. And how is it material? And how is it? How is it intended to, to affect something that would, would be material? Yes. And your honor, on page 754 of the record, it's 1524 of the transcript. The question from Mr. Weiner is why did you do that? Make the disclosure to one of these portfolio companies. And what he says is it's when Mr. Levander called my counsel and made clear, they plan to use the fact of his domestic violence arrest in the arbitration. He called Harold Evanski and Dina Katz to tell them because he'd been friends for 20 years. And so on direct, he explained to the arbitral tribunal that the reason he had gone and disclosed his domestic violence arrest to one of the company's business partners, but not to its board of directors was because we knew about it. And he was concerned it would come out in the arbitration. Didn't he say at page 754 of the record, he didn't remember the exact day. It was around the same time. So he did a waffle a little bit on whether or not he really knew. He did say it was around the same time, your honor. But when he said. He didn't remember the exact day, right? He said he didn't remember the exact day. It was around that time. But the question that he was answering is why did you do that? Which is to disclose this to the partner firms? Why did you do that? And the reason that he that he gives is because this call had come from Mr. Levander to Mr. Weiner. And he was concerned that it was going to come out in the arbitration. And so while he may not have known the exact day, he very clearly explained that the reason he did this was because he was concerned about conduct that EV safe would take. And what came out later was that he had actually made the call before. But he lost on this point. I don't understand why this is even material to the fee award. This has nothing to do with it. Well, under the CPR rules, again, on the fee award, right on on the fee award, part of what the panel is required under the CPR rules to take into consideration is the conduct of the parties in the arbitration hearings. We submit that that false testimony or a false explanation like that, that he did something in response to an event when he had actually done it before is exactly the type of information that's material to a determination of the conduct of the parties and therefore material to the decision to award fees and the amount of fees. So all right. Thank you. You have reserved two minutes for rebuttal. I see we have our clock back. I don't know what we would have done without our clock. But Mr. Weiner, you're up. But I think you're on mute, Mr. Weiner, we can't hear you. Not on mute. Can you hear me? OK, now we can hear you. OK. Yeah. So good morning. It's Greg Weiner from Ropes and Gray for the appellee, Mark Hurley. And may it please the court. This case presents a straightforward question of whether there's a basis to overturn an attorney's fee award issued to a prevailing party by a panel of three distinguished arbitrators. The answer is clearly no. And I know that your honors are fully familiar with the extensive and extreme deference given to arbitral rulings. This case does not come close to meeting that standard. Now, on the issue of the attorney's fees, a few key facts. Both sides sought their fees in the millions of dollars pursuant to agreed procedures on the amount of detail to give about the attorney time and hours. EB submitted two lengthy letters challenging the fees as excessive, even asserting Mr. Hurley should receive zero fees, even if he were found to be the prevailing party. EB had the right to seek more detail on the fees under the agreed procedures and never did so. The award expressly acknowledges EB's assertion that the fees were excessive. The award reduced or excluded certain fees as being excessive and unrelated to the proceeding. And then it awarded 50% of the amount. And as your honor has noted, the award expressly says, quote, it was reasonable and appropriate to award those fees to Mr. Hurley. Now, I think the term recoverable fees, because they use that, actually further supports the notion that this panel of three experienced arbitrators knew exactly what they were doing, which is they were limiting the award to recoverable fees, fees that were appropriately recoverable. What Mr. Steiner and EB have done is tried to distort the statement the panel made, where it said it lacked sufficient information from the parties to impugn the overall amount claimed. That is not a statement that we lack information to determine reasonableness. It's not a statement that they're refusing to determine reasonableness. And I submit the most plausible reading of that is that the tribunal was acknowledging that it lacked the detailed time records pursuant to the agreement of the parties to question the integrity of the total amount that was claimed. But it is a giant logical leap to read that as this highly experienced panel simply failed to consider the challenge that EB had made to the fees as being excessive. And critically, the panel had all the information it needed to make a reasonableness determination under the laws of Delaware for what constitutes a reasonable fee. The law in Delaware is clear. You don't need to review the detailed time entries. They had everything they needed to go through any of the factors that they thought were reasonable. Of course, they had been involved with the arbitration for five months. They had seen the performance of counsel and had determined Mr. Hurley was the prevailing party. And he was the prevailing party. He wasn't necessarily prevailing in full, that's true, but he was the prevailing party. And yet he only received 50% of a reduced amount of the fees, which I think itself suggests that they certainly determined, they made a determination about reasonableness as they expressly, expressly said. The other thing is the award says we're doing this in exercising our discretion. It doesn't say, as Mr. Steiner suggested, that we're only doing this based on he was only 50% successful. So there's no basis in the award to say that they failed to do what they should have done. And certainly they can't meet that incredibly high standard. Now, the other thing is the panel does not have to weigh into this kind of interpretive, to use Judge Bianco's word, slicing and dicing of the award. It's completely unnecessary. And the district judge, Judge Nathan, spelled out in detail the basis for why the fee award was perfectly reasonable, including a very hard forward arbitration with lots at stake in a complex case. Mr. Steiner said it was just an arbitration. Well, in fact, there were two motions for interim relief that Mr. Hurley had to make, which he was successful on both. There was a state court proceeding that EB brought in front of Justice Ostrager, where again, Mr. Hurley was successful. So these were highly complex, lots of significance at stake, significant amounts of money. And there was success by Mr. Hurley, and his fees were reduced substantially. The notion that there's no barely culpable justification I propose is preposterous. So that's on the fees. And let me just say, before the question was asked about the comparison of the fees, Delaware law does not allow, does not say if one party's fees are substantially more than the other, the other party, somehow they're excessive. That's not the test. And there were many reasons why the on one side, including this was Mr. Hurley's life. He had built this business from scratch, and he, in his view, was trying to be stolen from him by EB. EB also negotiated a fee discount with its firm. I mean, there's so many reasons why the comparison doesn't change the reasonableness of the fees. On the issue of the purported perjury, again, incredibly high standard. You can't really find any cases where an award is overturned based on perjury. You certainly can't find any cases where a fee award is overturned based on perjury. Just a couple of points on that. The threshold question of was there perjury, Judge Nathan found that EB failed to meet its burden to show by clear and convincing evidence that the testimony was known to be false and made with willful intent to obstruct justice. That finding is entitled to deference and EB has the burden to show it was clearly erroneous. They haven't come anywhere close on that. Very key part of this without getting into the particulars around the purported perjury, there was no perjury. But it is truly bizarre to say that a fee award was procured by fraud where the testimony took up literally a few lines in an 1800-page transcript. There were no follow-up questions around the timing of the disclosure to the single firm that they focused on. And instead, the focus was on the scope of discovery to the 12 firms, which there's no question around the timing of that disclosure. That was the only issue. The award itself did not reference the testimony. The award did not make findings based on the truthfulness or not of Mr. Hurley or his testimony. And as again, one of your honors pointed out, the testimony was given in connection with the counterclaims on which EB prevailed and therefore was not a basis of the prevailing party fee award. His argument is that if there was a demonstrated perjury, the conduct of the parties could be considered overall the untruthfulness, even though, as you pointed out, it was, you know, one line in 1800 pages could be considered theoretically be considered as a factor in the fee award. Do you disagree with that under the law? Well, first, the party's agreement in section 10.4 said that the prevailing party was entitled to all of its expenses. And the tribunal in footnote 325 of the award expressly said that included attorney's fees. So I believe they had the authority to issue that all the fees without regard to considering the conduct of the parties. But as to rule 19.2, which they we cite this in our papers, the commentary to those rules is very clear that when it's talking about apportioning costs based on conduct of the parties, it's focused on dilatory tactics and other efficiency concerns, not on some assessment of truthfulness of a party. And notably, when EB was challenging the fees in the arbitration, and it cited this rule, it contended that Mr. Hurley's false testimony and bad faith, those are their words, had contributed to the expense of the arbitration. That was the focus of it. So the issue is not whether someone might have lied or not. The issue is, did the conduct of the party cause additional expense, which the panel should take account of in apportioning the award, the fees awarded. That's on A1348. The only other point, Your Honor, is in order to prevail on this kind of a claim, you have to show you couldn't have discovered the perjury, the alleged perjury through due diligence. And EB acknowledges it had the right to discovery. It took discovery before the testimony, and it was aware of these conversations. And if the date of this one single conversation mattered, it had every ability to follow up and seek further discovery and it failed to do so. So that's a further independent ground on which to affirm the decision of the district court confirming the award. All right. Thank you, Mr. Weiner. Mr. Steiner, you have two minutes in rebuttal. Thank you, Your Honor. Just a couple quick points. Mr. Weiner suggested that somehow the argument as to the reasonableness of fees was waived based on what the parties agreed needed to be exchanged with one another. And that's just simply not the case. That doesn't change Delaware law. We submitted our opposition that made the point that the fee award was excessive and they hadn't shown reasonableness. They had an opportunity to respond to that, and they could have provided whatever additional information they wanted to provide the tribunal with enough information to make a determination. They chose not to do it. They were given that opportunity to respond. They chose not to put in additional information. Mr. Weiner said that he's not aware of any case, I believe he said, where an award was vacated on the basis of perjury. And there actually is such a case that the respondents cited, which is the Bonar case. It's from the 11th Circuit. It's not from this court. But Mr. Hurley cited that in his opposition brief. And there the 11th Circuit reversed in part the confirmation of our arbitration award with respect to punitive damages on the basis of perjury in terms of the qualifications of an expert witness. And so there is a case, Mr. Weiner cited it in his papers to this court. And then on the point about discovery, this questioning and this hearing was in relation to amended counterclaims that were heard three weeks after they were asserted. There was no third party discovery in the arbitration. We served requests on Mr. Hurley for communications. He didn't produce any, and then he testified to it at the hearing on direct. And only after the hearing had closed did the facts come out. If there are no further questions, I think my time is up. All right. Thank you to both of you, and we will reserve a decision.